IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
4:08-CV-93-D

| | |
|---|---|
| DANIEL FLLOYD, | ) |
| Plaintiff/Claimant, | ) |
| | ) **MEMORANDUM AND** |
| | ) **RECOMMENDATION** |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| Defendant. | ) |

This matter is before the court on the parties' cross-motions for judgment on the pleadings.¹ Claimant Daniel Flloyd seeks judicial review of the Commissioner's denial of his application for a period of disability and Disability Insurance Benefits. After a thorough review of the record and consideration of the briefs submitted by counsel, it is recommended that Claimant's Motion for Judgment on the Pleadings [DE-15] be denied and Defendant's Motion for Judgment on the Pleadings [DE-20] be granted.

## STATEMENT OF THE CASE

Claimant filed an application for a period of disability and Disability Insurance Benefits (DIB) on October 15, 2004. Claimant alleged that he became disabled on December 8, 2003, due to back impairments. (R. 49; see R. 18, 95-96.) The Commissioner denied his application initially and on reconsideration. Thereafter, Claimant timely requested a hearing and appeared via video conference before an Administrative

---

¹Claimant's motion is styled as a motion for summary judgment. However, his supporting brief is captioned "Brief in Support of Motion for Judgment on the Pleadings," and the motion is, in substance, a motion for judgment on the pleadings. The court, therefore, construes Claimant's motion as one for judgment on the pleadings.

Law Judge ("ALJ") on January 4, 2007. In a decision dated January 17, 2007, the ALJ found that Claimant was not under a "disability" as defined in the Social Security Act and therefore not entitled to benefits. On April 30, 2008, the Appeals Council denied Claimant's request for review of the matter, rendering the ALJ's decision a "final decision" for purposes of judicial review. See Walls v. Barnhart, 296 F.3d 287, 289 (4th Cir. 2002) (noting that when the Appeals Council denies a request for review, the underlying decision by the ALJ becomes the agency's final decision for purposes of appeal). Claimant timely commenced the instant action pursuant to 42 U.S.C. § 405(g).

**STANDARD OF REVIEW AND SOCIAL SECURITY FRAMEWORK**

The scope of judicial review of a final decision regarding disability benefits under the Social Security Act, 42 U.S.C. § 405(g), is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through application of the correct legal standards. See Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

This court must not weigh the evidence, as it lacks the authority to substitute its judgment for that of the Commissioner. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Thus, in determining whether substantial evidence supports the Commissioner's decision, the court's review is limited to whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his or her findings and

2

rationale in crediting the evidence. See Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439-40 (4th Cir. 1997).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process to be followed in a disability case. See 20 C.F.R. §§ 404.1520 and 416.920. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. If the claimant is not engaged in substantial gainful activity, then at step two the ALJ determines whether the claimant has a severe impairment or combination of impairments which significantly limit him or her from performing basic work activities. If no severe impairment is found, the claim is denied. If the claimant has a severe impairment, at step three the ALJ determines whether the claimant's impairment meets or equals the requirements of one of the Listings of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1. If the impairment meets or equals a Listing, the person is disabled per se.

If the impairment does not meet or equal a Listing, at step four the claimant's residual functional capacity ("RFC") is assessed to determine if the claimant can perform his or her past work despite the impairment; if so, the claim is denied. However, if the claimant cannot perform his or her past relevant work, at step five the burden shifts to the Commissioner to show that the claimant, based on his or her age, education, work experience and RFC, can perform other substantial gainful work. The Commissioner often attempts to carry its burden through the testimony of a vocational expert ("VE"), who testifies as to jobs available in the economy based on the characteristics of the claimant.

In this case, Claimant alleges that the ALJ erred in his decision by: (1) failing to properly evaluate whether Claimant met or equaled a Listing; (2) failing to properly determine plaintiff's RFC; and (3) finding Claimant's testimony not entirely credible.

3

## FACTUAL HISTORY

**I. The ALJ's Findings**

In making the decision in this case, the ALJ proceeded through the five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 and 416.920. The ALJ first found that Claimant had not engaged in substantial gainful activity since December 9, 2003, the alleged onset date. (R. 20.) Then, at step two, the ALJ determined that Claimant suffered from two "severe" impairments--lumbar disc disease and chronic lumbar strain-- which significantly limited his ability to perform basic work activities. (R. 20-21.) See 20 C.F.R. §§ 404.1520(c). At step three, the ALJ determined that Claimant's impairments did not, alone or in combination, meet or medically equal one of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. (R. 21.)

The ALJ next determined Claimant's RFC by considering all of his subjective complaints and reviewing the medical evidence. The ALJ concluded that Claimant retained the ability "to perform light exertional work activity with lifting and carrying 20 pounds occasionally and 10 pounds frequently with a sit/stand option." (R. 21-22.) At step four, the ALJ found that Claimant was unable to perform his past relevant work as a construction worker, material clerk, auto mechanic, electrician, and material handler. (R. 22.) The ALJ found that Claimant was 46 years old on the alleged disability onset date and that he was therefore a "younger individual" as defined in the relevant regulations. (Id.) See 20 C.F.R. § 404.1563. The ALJ also found that Claimant had at least a high school education and was able to communicate in English. (Id.) At step five, the ALJ determined that although Claimant could not return to his past relevant work, he could perform the work of a mail clerk, order caller, or cashier. (R. 23.) As a result, the ALJ found that Claimant was not

4

under a "disability," as defined in the Social Security Act, from December 9, 2003 through the date of his decision. (Id.)

## II.     The Administrative Hearing

### A.     Claimant's Testimony at the Administrative Hearing

Claimant testified at his administrative hearing. (R. 258-79.) He was 49 years old on the date of the hearing. (R. 258.) Claimant had been married for eleven years and was living in an apartment with his wife and their seven-year old son. (R. 259-60.) He had three other children. (R. 259.) Claimant completed high school and served in the United States Army Reserves. (R. 260.)

For the six years prior to the alleged disability onset date, Claimant worked on and off for Creekraft Cultured Marble in New Bern, NC, installing cultured marble sinks, countertops, whirlpool surrounds, and fireplace surrounds. (R. 261; see R. 92.) In this work, Claimant lifted between 75 and 300 pounds by himself, and sometimes as much as 400 pounds with another person. (R. 262.) He was injured on the job and filed a worker's compensation claim that eventually settled for around $22,000. (R. 262-63.) Claimant had other past relevant experience working as a material handler, automotive mechanic, laborer, and electrician. (R. 265-265; see R. 92.) After the alleged disability onset date, Claimant applied for work as a mechanic, handyman, and electrician, but was unable to secure employment. (R. 263.) Claimant testified that prospective employers turned him away because of his back problem. (R. 279.)

Claimant contends he would be unable to work at a desk job because his arms go numb when he extends them. (R. 265.) He has also experienced stiffness in his neck and pain radiating from his neck to his chest, arms, and hands. (R. 266.) Claimant testified that

5

he would be unable to alternate sitting and standing throughout an eight hour day, and that he would need to lie down. (R. 275.) He testified that he lies down for three or four hours per day. Pain also interrupts Claimant's sleep. (R. 276.)

In 2006, Claimant began receiving injections to address his neck pain at Carteret Pain Medicine. (R. 268-69.) Claimant contends that these injections gave him no relief and that on at least one occasion they caused him to lose feeling in his leg. (R. 269-70.) Medication did not alleviate Claimant's pain but merely made him drowsy. (R. 270, 277.) Claimant also received injections in his back. (R. 270.) Although Claimant described these shots as ineffective, he admitted that at one point his doctors were able to give him shots that relieved his pain. (Id.) As a result of the improvement, Claimant tried to do work on his family's cars but was limited in how much he could lift before his arms began trembling. (R. 271.) A tuneup that used to take him about an hour to complete now took him three days. (R. 272.)

Claimant testified that his wife worked two jobs, cared for Claimant, and managed the household. (R. 272.) Claimant's family had limited money for groceries. The family obtained garbage cans with wheels to avoid the strain of dragging, pushing, and pulling cans. Even with the new cans, Claimant would only handle the empty cans; his stepson took out the full ones. Claimant testified that his medications caused him to get upset with his wife over little things. (R. 271.) Claimant was bothered by the effect that his condition had on his relationship with his wife. (R. 272, 274.)

Before his injury, Claimant liked to play basketball, football, and baseball, and to go fishing. (R. 273.) By contrast, Claimant testified that a "normal day" for him at the time of the hearing consisted of alternating between lying down and sitting on a love seat. (R.

6

274.) Claimant did not do any lifting or carrying. The heaviest item Claimant would pick up was a cast iron skillet, weighing about five pounds, and even this caused him problems. (Id.) Claimant was physically unable to pick up his son. (R. 273.) Claimant cooked for his wife once a week at the time of the hearing, compared with every day before the injury. Claimant was limited to walking between the bed and the couch, and from the couch to the car. (R. 275.) He even drove to the mailbox, which was only about fifty feet away.

### B. Vocational Expert Testimony

Stephen E. Carpenter testified as a vocational expert at Claimant's hearing. The ALJ asked two hypothetical questions of Mr. Carpenter. The first characterized Claimant as able to perform light work but requiring a sit/stand option due to chronic back pain. (R. 283.) Mr. Carpenter testified that jobs existed in significant numbers in the national economy that Claimant would be vocationally qualified to perform based on his age, education, background, and training. (Id.) Claimant's attorney objected to Mr. Carpenter's inclusion in his analysis of transferable skills from jobs that Claimant held for only three months. (R. 285-86.) The ALJ then posed a second hypothetical question that was identical to the first except that it eliminated the potential use of transferable skills in the analysis by asking only about unskilled work. (R. 286.) Mr. Carpenter indicated that Claimant could work as a mail clerk, order caller, assembler, or cashier, all of which were unskilled jobs that existed in significant numbers in North Carolina and in the national economy. (R. 286-87.)

7

## III. Claimant's Arguments

Claimant's brief sets forth five issues (Claimant's Br. at 1), which distill to three specific arguments. The court addresses each in turn.

### A. The ALJ properly analyzed Claimant's medical conditions

Claimant argues that the ALJ failed to fully discuss whether his conditions met Listings 1.02 and 1.04, or to fully consider all of Claimant's physical and mental health issues in combination.

Claimant bears the burden of proving that his impairments meet or equal a Listing. 20 C.F.R. § 416.925(d); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981) (noting that the onus is on the claimant to prove that he or she suffers from a disability, as defined by statute). For a claimant to show that he suffers from severe impairments that meet or equal Listing 1.02, he must produce medical evidence of:

> ***Major dysfunction of a joint(s) (due to any cause)***: Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;
>
> OR
>
> B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

20 C.F.R. § 404, Subpart P, App. 1, § 1.02. Listing 1.04 concerns:

> ***Disorders of the spine*** (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet

8

arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

or

B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

or

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

Id. § 1.04. Both Listings 1.02 and 1.04 must be read in conjunction with section 1.00B of the Listings. See Hays v. Sullivan, 907 F.2d 1453, 1457-58 (4th Cir. 1990). Section 1.00B requires "a detailed description of the orthopedic and neurologic examination findings . . . [including] gait . . . [and] motor and sensory abnormalities . . . on the basis of objective observations during the examination and not simply a report of the individual's allegations . . . [and with] alternative testing methods . . . used to verify the objectivity of the abnormal findings . . . [and establishing] their continuous presence over a period of time." 20 C.F.R. § 404, Subpart P, App. 1, § 1.00B.

First, Claimant fails to provide evidence that he suffers from impairments that equal Listing 1.02. Contrary to the requirements of Listing 1.02, Claimant's treating physicians reported on a number of occasions that he ambulated effectively; for instance one doctor

9

noted, "His gait is stable. He is able to walk on his tip toes and heels." (R. 132.) Another doctor stated, "His gait appears to be within normal limits." (R. 192.) In addition, Claimant's treating physicians noted no major limitations in his ability to perform fine and gross movements. For instance, one of Claimant's treating physicians noted that he "detected no objective motor or sensory deficits." (R. 132.) In addition, the Physical Work Performance Evaluation Summary performed on Claimant showed that he was able to push 27 pounds, pull 23 pounds, had a grip strength of 137 pounds on the left and a grip strength of 125 pounds on the right. (R. 118.)

In addition, Claimant fails to show that his impairments meet or equal Listing 1.04, dealing with disorders of the spine. The ALJ found that Claimant "did not have a herniated nucleus pulposus as he had no evidence of nerve root compression or lumbar spinal stenosis resulting in pseudoclaudication established by findings on appropriate medically acceptable imaging." (R. 21.) Although the medical documentation, and the ALJ, noted that Claimant suffers from the severe impairments of lumbar disc disease and chronic lumbar strain (R. 20, 191), the medical evidence also shows that his spinal impairments do not rise to the level of a listing. For instance, a CT scan indicated that Claimant's lumbar spine showed "no focal herniation and spinal stenosis." (R. 146)

Finally, the ALJ did not err by failing to consider Claimant's mental and physical impairments in combination. As more fully discussed below, Claimant did not present sufficient evidence to suggest that he suffered from a mental impairment. Accordingly, having reviewed the ALJ's decision and the record in this matter, the court concludes that the ALJ adequately analyzed Claimant's impairments, alone and in combination, to arrive

10

at his conclusion that Claimant did not meet a Listing, and that this conclusion was supported by substantial evidence.

### B. The ALJ did not err in determining Claimant's RFC

The ALJ determined that Claimant had the RFC "to perform light exertional work activity with lifting and carrying 20 pounds occasionally and 10 pounds frequently with a sit/stand option due to chronic pain." (R. 21.) In doing so, the ALJ disagreed with State Agency medical consultants who found that Claimant could work at the medium exertional level. (Id.) The ALJ discussed objective medical evidence as well as Claimant's subjective complaints as offered through his hearing testimony. (R. 21-22.)

Claimant now argues that the ALJ erred in not giving due consideration to Claimant's "mental impairments resulting from pain" in determining his RFC. (Claimant's Br. at 8.) However, Claimant points to no evidence tending to support the inclusion of such an impairment in the ALJ's analysis. It is clear from Claimant's disability applications and from his testimony at the hearing, the he was seeking disability due to back, neck, shoulder and chest impairments, not a mental impairment resulting from pain. (R. 35, 49, 55, 265-71). Moreover, there is no indication that Claimant attempted to receive any treatment for mental impairments, such as visits to mental health professionals or medications prescribed to address mental health issues. An ALJ has a duty to evaluate the intensity and persistence of a claimant's symptoms. See 20 C.F.R. §§ 404.1529(c), 416.929(c). However, the duty does not extend to speculating as to the impact of those symptoms. Instead, the claimant has the burden of furnishing evidence supporting the existence of a condition and the effect of that condition on his ability to work on a sustained basis. See 20 C.F.R. §§ 404.1512(c), 416.912(c). However, Claimant here has done no more than

11

suggest that the ALJ should have speculated as to what extent his mental health issues may have impaired his ability to work. The ALJ was not required to engage in such guesswork.

The ALJ fully considered Claimant's allegations of pain, as detailed in the following section, and his determination of Claimant's RFC was supported by substantial evidence and adequately detailed in his written decision. The ALJ did not err in failing to include a mental impairment in his calculation of Claimant's RFC.

### C. The ALJ did not err in finding Claimant's testimony not entirely credible

Claimant also contends that the ALJ impermissibly concluded that his testimony regarding his symptoms and pain was not entirely credible. (See R. 22.) Claimant testified that pain interfered with his sleep; made it necessary for him to alternate between lying down and sitting on a love seat all day; prevented him from carrying his kids; kept him from cooking more than one day a week; and severely limited his ability to lift or carry anything. (R. 266, 272-76.) Claimant testified that medications and injections generally did not help him. (R. 270, 277.)

An ALJ performs a two-step inquiry to determine whether a claimant's allegations of pain and limitations are credible. First, the ALJ must determine if there is objective medical evidence that supports the existence of a medical impairment which reasonably could be expected to cause the pain and symptoms alleged. See Hines v. Barnhart, 453 F.3d 559, 564-65 (4th Cir. 2006). In this case, the ALJ determined that Claimant suffered from impairments which could reasonably be expected to produce the alleged symptoms. (R. 22.) Next, the ALJ evaluates a claimant's statements regarding his symptoms. Craig v. Chater, 76 F.3d 585, 596-97 (4th Cir. 1996). This evaluation must take into account a

12

claimant's subjective statements about his pain as well as all available evidence, including the claimant's medical history, medical signs, laboratory findings, objective medical evidence of pain, and other evidence that might shed light on the severity of the impairment, such as evidence of the claimant's activities of daily living, specific descriptions of the pain, and any treatment regimen. Id. at 595. Where the first step in the credibility analysis is met (as it was here), at the second step, the claimant's allegations about his pain "may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity." Id. However, the ALJ is not required to accept a claimant's allegations "to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause [the pain alleged]." Id.

In this case, at the second step of the analysis, the ALJ noted inconsistencies between Claimant's testimony and the evidence in the record. (R. 20-22.) For example, the ALJ contrasted Claimant's assertion that he had trouble lifting a five pound skillet with his demonstrated ability to lift a far greater amount at his physical capacity evaluation just prior to the alleged onset date. (R. 22, 116-21.) The ALJ noted that on December 8, 2003 (the alleged onset date), Claimant's treating physician "released [Claimant] to report to medium work based upon the physical work performance evaluation summary." (R. 22, 116-21, 123.) At Claimant's next medical evaluation of record, nearly fourteen months later, on February 1, 2005, the doctor stated that "[i]n spite of his impairment, [Claimant] can still sit, stand, lift, carry, hear, speak, and travel." (R. 22, 159.) On March 22, 2006, the ALJ noted, Claimant told his doctor "that he had almost no pain in his lower back after receiving two epidural injections and that he was looking for a job." (R. 22, 225.)

13

Claimant accuses the ALJ of cherry-picking the record for evidence supportive of a finding that Claimant was not disabled, and of issuing "conclusory determinations, not properly explained and not in keeping with the record as a whole." (See Claimant's Br. at 6-7.) However, after reviewing the entire record and the ALJ's written decision, the court finds that the ALJ thoroughly explained his credibility analysis and how he resolved inconsistencies in the evidence. It is not the province of this court to determine the weight of the evidence. Hays, 907 F.2d at 1456. The ALJ correctly satisfied his duty under the applicable regulations and law by taking into account Claimant's subjective statements about his pain as well as all available evidence in determining that inconsistencies existed between Claimant's statements and his medical records. Accordingly, the ALJ did not err in finding Claimant not entirely credible.

## **CONCLUSION**

Accordingly, because there is substantial evidence to support the findings of the ALJ, the court **RECOMMENDS** that Claimant's motion for judgment on the pleadings be **DENIED**, and that Defendant's motion for judgment on the pleadings be **GRANTED**.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten (10) days from the date of receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual

findings and legal conclusions not objected to, and accepted by, the District Court.

This the 1st day of July, 2009.

_____

DAVID W. DANIEL

United States Magistrate Judge